## UNITED STATES v. DAVIS.

### No. 10192.

Circuit Court of Appeals, Fifth Circuit.

May 29, 1942.

George T. Mitchell, U. S. Atty., of Tupelo, Miss., Chester L. Sumners, Asst. U. S. Atty., of Corinth, Miss., Roy J. Goss, Atty., Dept. of Justice, of Jackson, Miss., and Julius C. Martin, Director, Bureau of War Risk Litigation and Thomas E. Walsh, Atty., Dept. of Justice, both of Washington, D. C., for appellant.

Thomas Fite Paine, of Aberdeen, Miss., and Alvis M. Mitchell, of Pontotoc, Miss., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

In this suit on a term war risk policy the judge refused to direct a verdict for the United States, and the jury signed a verdict, "We find for the plaintiff and fix the date of permanent and total disability as Sept. 1, 1919." Judgment was entered for plaintiff, and the United States appeal.

■ The first question raised is that the verdict does not support the judgment, because the stipulated fact is that the premium due August 1, 1919, was not paid, so that in truth the insurance expired August 31, 1919, and a disability on September 1st was a day too late. The stipulation, after referring to the insurance, reads in part: "which contract of insurance lapsed for nonpayment of premium due August 1, 1919, insurance protection ceasing and terminating on September 1, 1919, unless on or prior to said date the plaintiff became totally and permanently disabled." The judge in his charge to the jury fixed the form of the verdict, if for the plaintiff, which was used. No exception was taken to the charge. The evidence does not suggest any difference in the condition of the plaintiff on September 1st and on August 31st. The use by judge and jury of September 1st as the critical date instead of August 31st was manifestly an error induced by the stipulation. The parties to the stipulation are estopped to take any advantage of it.

The remaining question is the sufficiency of the evidence to make a jury question. It was testified that the plaintiff in 1918, when he entered the Army, was a young, wholly illiterate negro, dependent on manual labor for a livelihood, able-bodied, and put in a labor battalion in France. In that work he injured his back and side and hip and was sent to the hospital, and was afterwards able to do only very light work. After discharge from the Army in July, 1919, he tried to work at farming but was unable, and has since been able to do only "piddling jobs" such as going errands, delivering light packages, or driving a car on short trips. He has at all times suffered with dizzy spells, pains in back and hip, and much exercise causes such shortness of breath he cannot continue. He was treated by doctors and hospitalized without much relief. He has lived most of the time by driving the car of his present attorney, who gives him board and clothes and some occasional money. Two physicians who examined him and treated him in 1919 and 1920 say that his blood pressure was continually very high, 190 to 200, and this made it unsafe to ex-

ercise or do heavy work, besides the pain of which he complained. They could find nothing to cause the hypertension, unusual in a young man, and thought it due to chronic appendicitis, and recommended an operation which he refused to have. In 1929 the operation was performed, but brought no relief. These physicians testify that they are now of opinion that their diagnosis was wrong, and they do not know what was or is the matter. His condition grows no better. They think there is no likelihood of recovery. Several witnesses say he has never done substantial work since he came out of the Army and has been incapable of it. The records of the Government hospitals show the appendicitis operation, and some blood pressure readings which were normal.

■ While the plaintiff manages to live, we think the evidence makes a question for the jury as to whether in August, 1919, he was able continuously to follow a substantially gainful occupation, and their finding that he was not we may not overturn. Whether at that time his disability was founded on conditions that rendered it reasonably certain that the total disability would continue during life is a closer question. If the diagnosis of appendicitis, generally relievable by operation, had been correct, permanency did not then exist; for his ailment was probably curable. United States v. McCluskey, 5 Cir., 128 F.2d 509, this day decided. But the subsequent history of the disease throws valuable and helpful light on the real condition of the plaintiff in August, 1919. It shows that the diagnosis of appendicitis was incorrect, that he did not have this curable disease, but something else, which remains a mystery to the physicians. The subsequent history shows this undiscovered ailment has persisted, with the total disability it causes. There is nothing to show it is or ever was curable. The fact that for so long a time it has remained unrelievable, and a mystery to medical men, warrants an inference that, whatever it may be, it was incurable from the beginning. The difference between the present case and McCluskey's is this: The doctors in both instances made a mistaken diagnosis at first, as the subsequent history proved. But in McCluskey's case both the first diagnosis of bronchitis, and the later discovered true diagnosis of tuberculosis were curable diseases. There was at the critical date abundant room to expect relief from either, rather than permanency. In

the present case the first diagnosis of a curable disease proved wrong, but nothing is substituted except a question mark. We are holding that in such a case, the nature of the disease being undiscoverable, the lapse of time after treatment without relief affords the only answer to the question of permanency, and may be taken to show permanency from the beginning. The jury's conclusion that it does show that, we will not overrule.

Affirmed.